CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ANNE O'TOOLE (Bar No. 340469)
CLAIRE KENNEDY (Bar No. 333632)
(E-Mail: claire_kennedy@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
HERBERT REDHOLTZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>            v.<br><br>HERBERT REDHOLTZ,<br><br>       Defendant. | Case No. 2:22-CR-433-MCS<br><br>**DEFENDANT'S MOTION TO COMPEL THE PRODUCTION OF *BRADY* MATERIALS**<br><br>**Proposed Hearing: October 9, 2023**<br>**Proposed Hearing Time: 3:00 p.m.** |

Herbert Redholtz, by and through his counsel, Deputy Federal Public Defenders Anne O'Toole and Claire Kennedy, hereby files this motion to compel discovery related to: (1) the federal government's initial decision not to prosecute Mr. Redholtz in November 2020; (2) communications between federal and state prosecutors about the status of Mr. Redholtz's state prosecution; (3) the District Attorney's office's inability to proceed with the state prosecution; (4) the federal government's adoption of the state case in September 2022; (5) the impact of that federal indictment on Mr. Redholtz's state case; and (6) the personnel file, which would include performance reviews, and any other *Henthorn* material regarding Special Agent Kimmesia Sampson.

1       The defense believes that the requested materials contain information about the investigating agent's mishandling of the investigation that is favorable to the defense, because it would reveal violations of Mr. Redholtz's constitutional rights and could be used to impeach witnesses.

      This motion is based upon the Due Process Clause of the United States Constitution, *Brady v. Maryland,* 373 U.S. 83, 87 (1963), the attached *in camera* Declaration of Counsel, and any other information that may be presented the Court at a hearing on this matter.

Respectfully submitted,

CUAUHTEMOC ORTEGA  
Federal Public Defender

DATED: September 8, 2023      By: */s/ Claire Kennedy*  
                                             ANNE O'TOOLE  
                                             CLAIRE KENNEDY  
                                             Deputy Federal Public Defender  
                                             Attorneys for HERBERT REDHOLTZ

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. RELEVANT BACKGROUND

In January 2015, Department of Homeland Security Special Agent Kimmesia Sampson began an investigation into Mr. Redholtz after receiving a cyber tip from the National Center for Missing and Exploited Children ("NCMEC") regarding an image of suspected child pornography that allegedly was shared over Microsoft's Hotmail email service. In March 2015, Special Agent Sampson obtained a federal warrant to search the contents of a Microsoft email account that she believed belonged to Mr. Redholtz. Microsoft returned data associated with the email account two days after receiving the warrant. Later, in June 2015, Special Agent Sampson and fourteen other agents executed a search warrant at Mr. Redholtz's home where they seized a cell phone and a laptop computer. Although Special Agent Sampson was required to complete her review of the Microsoft email account by May 2015, and the cell phone and laptop by August 2015, she did not. In fact, Special Agent Sampson reviewed only five days of emails produced by Microsoft,[1] and she never even reviewed the data contained on the cell phone or laptop.[2] She did, however, retain possession of the Microsoft data and the devices for over five years.

In November 2019, Special Agent Sampson was removed from investigating this case, and a new Special Agent, Derek Baker, was assigned. When Special Agent Baker reviewed the case, he realized that the electronic data had never been reviewed. Still, he waited six months to do anything about it. In June 2020—five years after the previous warrants had issued—Special Agent Baker applied for another search warrant to review the data from the cell phone, laptop, and Microsoft account and admitted "that Special

---

[1] The start of the Microsoft data range was October 17, 2014 and Special Agent Sampson noted that she stopped her review on October 22, 2014. Even then, Special Agent Sampson was reviewing this Microsoft data past the deadline prescribed in the warrant. Although the warrant required her to review Microsoft data by May 2015, her handwritten notes revealed that her review of the Microsoft data took place in June 2015.

[2] Although the deadline for Special Agent Sampson to search Mr. Redholtz's cell phone and laptop was August 2015, forensic imaging of these devices was completed in October 2015. Special Agent Sampson never asked for an extension.

3

Agent Sampson ha[d] not completed her review" of the items seized or the data obtained. In fact, "there appeared to be no documented progress made by Special Agent Sampson" with respect to Mr. Redholtz's cell phone and laptop.

In November 2020, despite Special Agent Baker's attempts to clean up Special Agent Sampson's botched investigation of the case, federal prosecutors declined to prosecute Mr. Redholtz's case. Federal prosecutors then furnished state prosecutors with documents related to Mr. Redholtz's case. The discovery produced to defense counsel in this matter does not contain any information about the federal declination decision other than to state that it occurred.

In March 2021, state prosecutors submitted a felony arrest warrant for Mr. Redholtz alleging violations of Cal. Pen. Code § 311 for possession of child pornography. (*See* LASC Case No. KA126846 Case Summary.) It took over a year for Mr. Redholtz to receive discovery in his state case. On September 1, 2022, the case was called for preliminary hearing and state prosecutors moved to trail the hearing to a later day, claiming that witnesses were unavailable. The state court trailed the preliminary hearing to September 22, 2022 over Mr. Redholtz's objection. On September 21, 2022, state prosecutors again moved to trail the preliminary hearing to the last day of the statutory period—October 3, 2022—again claiming that their witnesses were unavailable. While state prosecutors trailed the preliminary hearing, federal prosecutors worked to obtain a federal indictment. (*See* ECF 1.) On September 21, 2022, federal prosecutors filed the indictment in this case, (*see id.*), and on September 28, 2022, Mr. Redholtz made his initial appearance in federal court, (ECF 8). He was released on bond and went to state court for his preliminary hearing on October 3, 2022. Rather than proceed with the hearing, state prosecutors dismissed their case. (*See* LASC Case No. KA126846 Case Summary).

Given that Special Agent Sampson seemingly abandoned her investigation of the case and retained Mr. Redholtz's devices and electronic data for five years, it seems likely that Special Agent Sampson's investigation practices were discussed by federal

4

1  prosecutors when declining to bring an indictment in November 2020, and when
2  communicating with state prosecutors about which prosecutorial agency should
3  prosecute the case in September 2022. As discussed in more detail in the accompanying
4  *in camera* Declaration of Counsel, federal prosecutors likely had concerns about their
5  ability to prosecute this case and Special Agent Sampson's credibility as a witness.
6      Thus, in March 2023, the defense requested discovery related to: (1) the federal
7  government's initial decision not to prosecute Mr. Redholtz in November 2020;
8  (2) communications between federal and state prosecutors about the status of Mr.
9  Redholtz's state prosecution; (3) the District Attorney's office's inability to proceed
10 with the state prosecution; (4) the federal government's adoption of the state case in
11 September 2022; (5) the impact of that federal indictment on Mr. Redholtz's state case;
12 and (6) the personnel file, which would include performance reviews, and any other
13 *Henthorn* material regarding Special Agent Kimmesia Sampson. In August 2023, the
14 government finally responded to this request, and refused to produce this requested
15 discovery on the grounds that it is not discoverable under Federal Rule of Criminal
16 Procedure 16(a)(2), and that it is protected by the work product privilege. The parties
17 met and conferred regarding these requests, but were unable to reach an agreement.

## II. ARGUMENT

**A.    The requested materials are discoverable under *Brady v. Maryland*.**

20     The government has a constitutional duty to disclose, upon request, all evidence
21 favorable to a defendant. *See Brady v. Maryland,* 373 U.S. 83, 87 (1963). In *United*
22 *States v. Bundy*, the Ninth Circuit recently made clear that the government's pretrial
23 *Brady* obligation extends to favorable evidence, regardless of any assessment of
24 materiality. 968 F.3d 1019, 1033 (9th Cir. 2020) ("[T]rial prosecutors must disclose
25 favorable information without attempting to predict whether its disclosure might affect
26 the outcome of the trial."); *see also United States v. Price*, 566 F.3d 900, 913 n.14 (9th
27 Cir. 2009); *United States v. Olsen*, 704 F.3d 1172, 1183 (9th Cir. 2013). In *Bundy*, the
28 Ninth Circuit clarified that materiality is a retrospective inquiry "appropriate only in the

context of appellate review; thus, trial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial." 968 F.3d at 1033. Favorable evidence includes, but is not limited to, impeachment evidence and exculpatory evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999).

In the pretrial context, the Ninth Circuit has instructed prosecutors to err on the side of disclosure: "[T]he proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses . . . . [I]f doubt exists, it should be resolved in favor of the defendant and full disclosure made." *Price*, 566 F.3d 913 n.14 (quoting *United States v. Acosta*, 357 F.Supp.2d 1228, 1239-40 (D. Nev. 2005)); *see also United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013)("It . . . behooves the government to interpret the disclosure requirement broadly and turn over whatever evidence it has pertaining to the case.") "The prosecution is trusted to turn over evidence to the defense because its interest 'is not that it shall win a case, but that justice shall be done.'" *Bundy*, 968 F.3d at 1023 (citation omitted). Prosecutors also have "an affirmative obligation to learn of potentially favorable evidence and provide it to the defense." *Id.* at 1038.

While Federal Rule of Criminal Procedure 16(a)(2) may not require the government to produce "reports, memoranda, or other internal government document[s]" made in connection with a prosecution, the government still must produce those documents if they contain information that is favorable to the defense. *See United States v. Armstrong*, 517 U.S. 456, 475 (1996) (Breyer, J., concurring) (quoting 2 Charles Alan Wright, *Federal Practice and Procedure* § 254.2, at 141 (3d ed. 2000) ("Because *Brady* is based on the Constitution, it overrides court-made rules

6

of procedure. Thus the work-product immunity for discovery in Rule 16(a)(2) . . . does not alter the prosecutor's duty to disclose material that is within *Brady*.").[3]

**B.     *Brady* requires production of the requested materials that contain favorable evidence, for example, to the extent they discuss Special Agent Sampson's mishandling of the investigation or suggest that constitutional violations may have occurred.**

Two things are certain: (1) Special Agent Sampson failed to complete her review of Mr. Redholtz's cell phone, laptop, and Microsoft data before the warrant authorizing her ability to do so expired; and (2) the government retained Mr. Redholtz's cell phone, laptop, and Microsoft data for five years despite there being no case pending against him. Federal prosecutors tasked with assessing their ability to prosecute this case would undoubtedly be concerned about investigative delays, Special Agent Sampson's apparent abandonment of the investigation, and the government's prolonged retention of Mr. Redholtz's devices. Indeed, federal prosecutors decided to obtain a second federal search warrant in 2021 to go back to the same data they had unlawfully retained, in an apparent effort to clean up the investigation from 2015. But still, in November 2020, federal prosecutors did not believe that they could (or should) file an indictment against Mr. Redholtz in this case. However, in September 2022, while state prosecutors were having trouble preparing for a preliminary hearing by the deadline, federal prosecutors reversed course and filed the instant allegations. The question is what changed? It is not that Mr. Redholtz committed new conduct, since the allegations occurred between 2012 and 2015. (*See* ECF 1.) And it cannot be that the government received evidence of which it was previously unaware, since the discovery produced was in the government's possession when it declined to prosecute Mr. Redholtz's in November 2020. Given this reality, it seems entirely plausible that a different set of

---

[3] Under this Court's standing order, the government was required to produce *Brady* materials within seven days of Mr. Redholtz's arraignment.

7

prosecutors elected to charge the case despite, but having considered, Special Agent Sampson's problematic investigation.

To the extent the federal government's November 2020 declination decision was related to Special Agent Sampson's handling of the investigation and the evidence, or her failure to abide by internal protocols and procedures, that is information favorable to the defense which must be produced.[4] *See Olsen*, 704 F.3d at 1181 (finding that information about a lab technician's work being "characterized by sloppiness and haste" favorable to the defense). Indeed, it belies logic that the mishandling of the investigation was not discussed at all leading up to and in the declination decision. Further, if there was discussion of whether the second search warrant would "fix" or did not "fix" any issues with retaining the digital evidence for five years, that information is also discoverable under *Brady*.

The government has orally represented that the United States Attorney's Office ("USAO") declined to prosecute Mr. Redholtz in November 2020 due to "bandwidth" issues. However, this could mean many things. For instance, the USAO could have prioritized prosecuting other cases that had fewer constitutional violations or investigative problems. In any event, Mr. Redholtz is entitled to review the underlying materials to the extent they are favorable to his defense.

If federal prosecutors' communications with state prosecutors about the March 2021 state arrest warrant, the September 2022 federal indictment, or the October 2022 dismissal of the state case involved a discussion about Special Agent Sampson's authority to retain Mr. Redholtz's devices or other concerns about investigators' handling of both the evidence and investigation, or issues with state prosecutors' ability to hold a timely preliminary hearing, that is information favorable and relevant to a

---

[4] Mr. Redholtz "needn't spell out his theory of the case in order to obtain discovery." *Hernandez-Meza*, 720 F.3d at 768. And the government is not entitled to withhold discovery on the basis of materiality. *Bundy*, 968 F.3d at 1033. Accordingly, Mr. Redholtz is providing the accompanying *in camera* Declaration of Counsel to explain in further detail to the Court why the requested discovery is favorable.

8

motion to suppress based on a constitutional violation. *See United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993) (finding that the due process principles outlined in *Brady* apply in the pretrial suppression context). So too would *Henthorn* material regarding Special Agent Sampson and information contained in her personnel file suggesting that she would not be a credible witness. Prosecutors' communications with colleagues about mishandled investigations or evidence potentially subject to suppression are not shielded by the work product privilege. *See United States v. Kohring*, 637 F.3d 895, 907 (9th Cir. 2011) (noting that a prosecutor's work product may be discoverable if it contains underlying exculpatory facts); *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006). Indeed, during change of plea colloquies, courts regularly ask the government "is the defendant pleading guilty due to any illegally obtained evidence?" This is to confirm that the government has no doubts as to the constitutionality of its warrants or searches. Here, if prosecutors had doubts, at any point, about the legality of Special Agent Sampson retaining Mr. Redholtz's devices for five years, or the legality of Special Agent Baker obtaining a new warrant to review those devices five years later, or about other potential violations of Mr. Redholtz's rights, those communications must be produced.

### III. CONCLUSION

For the reasons stated above, the defense requests that the Court compel the government to produce the requested materials. Alternatively, the defense requests that the Court compel the government to file the requested materials *in camera* for the Court's review to determine its discoverability.

                 Respectfully submitted,

                 CUAUHTEMOC ORTEGA
                 Federal Public Defender

DATED: September 8, 2023     By: */s/ Claire Kennedy*
                 ANNE O'TOOLE
                 CLAIRE KENNEDY
                 Deputy Federal Public Defender
                 Attorneys for HERBERT REDHOLTZ