E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Cyber and Intellectual Property Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2429
     Facsimile: (213) 894-0141
     E-mail:    nisha.chandran@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 22-00433-MCS-1 |
| Plaintiff, | |
| v. | GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL |
| HERBERT REDHOLTZ, aka "badherb51@hotmail.com," | MOTION HEARING DATE: October 16, 2023, at 3:00 p.m. |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Nisha Chandran, hereby files its Opposition to Defendant Herbert Redholtz's ("defendant") Motion to Compel (Dkt. 29) ("Motion").

This Opposition is based upon the attached memorandum of points

//

//

and authorities, the files and records in this case, and such further

evidence and argument as the Court may permit.

Dated: September 19, 2023          Respectfully submitted,

                                   E. MARTIN ESTRADA
                                   United States Attorney

                                   CAMERON L. SCHROEDER
                                   Assistant United States Attorney
                                   Chief, National Security Division


                                   ___/s/_____
                                   NISHA CHANDRAN
                                   Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES..................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.   INTRODUCTION.....................................................1

II.  BACKGROUND......................................................2

     A.   Factual Background.........................................2

          1.   Defendant Sent and Received Child Pornography
               from a Hotmail Email Account..........................2

          2.   Search of Defendant's Email Account Revealed
               Hundreds of Images of Child Pornography...............3

          3.   Search of Defendant's Home Led to Seizure and
               Forfeiture of Digital Devices.........................4

     B.   Procedural Background......................................5

          1.   Defendant Was Charged by State Authorities...........5

          2.   Defendant's Case Was Adopted Federally and
               Government Produced Significant Discovery............6

          3.   Defendant Filed Motion to Compel Charging
               Information..........................................7

III. ARGUMENT........................................................8

     A.   Legal Standard............................................8

     B.   Defendant's Requests Regarding Charging Decisions
          (Requests #1-5) are Speculative, Irrelevant, and
          Inaccurate...............................................11

     C.   Defendant's Request Regarding Agent Sampson (Request
          #6) is Irrelevant and Inaccurate.........................15

IV.  CONCLUSION......................................................16

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                           <u>PAGE</u>

<u>Brady v. Maryland</u>,
   373 U.S. 83 (1963) ........................................... 2, 7, 9

<u>Giglio v. United States</u>,
   405 U.S. 150 (1972) .......................................... 2, 7, 9

<u>Kaley v. United States</u>,
   571 U.S. 320 (2014) ............................................... 8

<u>Pennsylvania v. Ritchie</u>,
   480 U.S. 39 (1987) ............................................... 10

<u>United States v. Bundy</u>,
   968 F.3d 1019 (9th Cir. 2020) .................................... 9

<u>United States v. Fernandez</u>,
   231 F.3d 1240 (9th Cir. 2000) ................................... 11

<u>United States v. Fort</u>,
472 F.3d 1106 (9th Cir. 2007)    . . . . . . . . . . . . . . . .   9

<u>United States v. Henthorn</u>,
931 F.2d 29 (9th Cir. 1991) ..................................... 15

<u>United States v. Lucas</u>,
   841 F.3d 796 (9th Cir. 2016) ................................... 10

<u>United States v. Mincoff</u>,
574 F.3d 1186 (9th Cir. 2009) ................................... 10

<u>United States v. Stinson</u>,
   647 F.3d 1196 (9th Cir. 2011) .................................. 10

<u>United States v. W.R. Grace</u>,
401 F. Supp. 2d 1069 (D. Mon. Nov. 23, 2005). . . . . . . .. . 14

<u>Weatherford v. Bursey</u>,
   429 U.S. 545 (1977) ............................................... 8

<u>FEDERAL RULES</u>

Fed. R. Crim. P. 16................................................. 9

ii

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2
## I.   INTRODUCTION

3    Defendant Herbert Redholtz ("defendant") is charged with

4 distribution, receipt, and possession of child pornography through

5 his email account, badherb51@hotmail.com.  Defendant now moves to

6 compel the production of information relating to the government's

7 sensitive, internal charging decisions that he speculates contains

8 favorable information.  Defendant's motion is premised on baseless

9 speculation, including about witnesses and evidence that are not

10 relevant to the charged case, about the reasons for the government's

11 actions and decisions in connection with the instant prosecution.

12 The government is not privy to the defendant's claims in his <u>in</u>

13 <u>camera</u> filing, and thus cannot respond to those claims in this

14 filing.  But his motion makes clear that defendant is on a fishing

15 expedition that this Court should reject.

16    The government is well-aware of its discovery obligations and

17 has evaluated defendant's allegations.  The government has produced

18 more than 1,000 pages of discovery in this case, including a recent

19 supplemental production in response to defendant's additional

20 discovery requests.  In response to this motion, the government also

21 re-reviewed its files for any discoverable material responsive to

22 defendant's speculative motion to compel and confirmed that it is in

23 compliance with its discovery obligations, including under <u>Brady v.</u>

24 <u>Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 405 U.S. 150

25 (1972), and its progeny.  The government will continue to fulfill

26 those obligations on an ongoing basis.  Because defendant's demands

27 seek internal Department of Justice charging information not required

28 by law -- indeed, sensitive information that is protected from

1  disclosure for good reason -- defendant's motion to compel should be

2  denied.  Any other result would have a detrimental effect on

3  prosecutorial work product, discretion, and deliberation.

4  **II.  BACKGROUND**

5      **A.  Factual Background**

6          **1.  Defendant Sent and Received Child Pornography from a
            Hotmail Email Account**

7

8      On October 17, 2014, defendant attempted to send an email to

9  another individual from his Hotmail account, badherb51@hotmail.com,

10 that contained a suspected child pornography image.  In the email,

11 which had the subject line "Re: very talented," defendant wrote,

12 "suck daddys cock, you little whore," in response to previously

13 receiving an image depicting a nude prepubescent minor female who

14 appeared to be performing an oral sex act on an adult male.

15 Microsoft reported the email to the National Center for Missing and

16 Exploited Children ("NCMEC"), explaining that the user of

17 badherb51@hotmail.com had received a child pornography image and then

18 attempted to resend the received image.[1]  NCMEC generated a Cyber Tip

19 report with the flagged email, associated the badherb51@hotmail.com

20 email address with defendant through defendant's public MySpace

21 account, and shared the tip with law enforcement.  Homeland Security

22 Investigations ("HSI") Special Agent Kimmesia Sampson began

23

24 ───────────────

        [1] NCMEC functions as a clearinghouse for illegal child sexual
25 abuse images reported by U.S. electronic service providers and thus
   has unique insight into identifying images of child sexual abuse
26 being distributed on the Internet.  By using hash values, or unique
   numerical identifiers assigned to digital files like a "digital
27 fingerprint" for the image, NCMEC uses technology to help enable
   service providers to compare hash values associated with child
28 pornography images on their services with hash values that NCMEC
   maintains of known images of child pornography.

investigating the NCMEC Cyber Tip and confirmed that the email account was associated with an IP address registered to defendant at his home in West Covina, California.

       **2.**    <u>**Search of Defendant's Email Account Revealed Hundreds of Images of Child Pornography**</u>

On March 17, 2015, the Honorable Alicia G. Rosenberg issued a federal search warrant for defendant's badherb51@hotmail.com email address.  Case No. 15-MJ-0469.  Microsoft provided records in response to that search warrant on March 22, 2015.

Agent Sampson began review of the email content from Microsoft, but did not complete that review.  Agent Sampson left the Los Angeles HSI office and the case was reassigned to HSI Special Agent Derek Baker in November 2019.  Upon taking over the case, Agent Baker reviewed the case file and status of the case and applied for a new search warrant for the email records produced by Microsoft for the badherb51@hotmail.com email address.  Case No. 20-MJ-02510.

In the affidavit supporting the warrant application, Agent Baker explained that, based on his review, it appeared that only approximately 2,200 items from the Microsoft data had been previously reviewed and categorized by Agent Sampson, but that more than 250,000 items remained uncategorized.  Agent Baker further explained that, based on the analysis of a HSI Computer Forensic Agent, the digital evidence from 2015 appeared to be in the same condition at the time of Agent Baker's application for a new warrant.  On June 3, 2020, the Honorable Maria A. Audero issued a new federal search warrant authorizing SA Baker to review the email records produced by Microsoft for defendant's badherb51@hotmail.com email address.  Case No. 20-MJ-02510.

As authorized by the warrant, Agent Baker reviewed the full content of the email records produced by Microsoft for defendant's badherb51@hotmail.com email address.  From that review, Agent Baker independently identified 448 unique images as child pornography, 109 unique videos as child pornography, 402 unique images as child erotica, and 25 unique videos as child erotica.  In November 2022, these 850 images and 134 videos were submitted to NCMEC so that NCMEC could identify whether any of the children in the images and videos were from a known series.[2]  NCMEC responded that approximately 282 of the files appeared to depict at least one actual child that had previously been identified by law enforcement.  The charges in this case are based on the content of defendant's email account.

**3.    Search of Defendant's Home Led to Seizure and Forfeiture of Digital Devices**

In June 2015, HSI agents, along with Los Angeles Police Department officers, searched defendant's home pursuant to a federal search warrant.  Case No. 15-MJ-1060.  In a brief interview, defendant admitted that he used the badherb51@hotmail.com email address.  Relevant here, HSI agents seized and imaged a cell phone and a laptop that belonged to defendant (collectively, the "digital devices").

In August 2015, defendant was notified that his digital devices were subject to civil forfeiture consistent with U.S. Customs and Border Protection's ("CBP") administrative forfeiture policy. Defendant submitted a petition seeking relief from seizure of the

---

[2] A "known series" refers to a child pornography series with which law enforcement is familiar and has seen in the course of casework.

4

property and requested that CBP consider his petition administratively.  In his petition, defendant acknowledged that he was giving up his right to have the case immediately referred to the U.S. Attorney for court action.  In September 2015, CBP informed defendant that his request for relief was denied.  Defendant filed no supplemental petitions and the forfeiture was complete in January 2016.  Because those digital devices were forfeited, the government was lawfully permitted to retain them.

When the case was re-assigned to Agent Baker after Agent Sampson's departure, Agent Baker similarly attested to the Court that, based on the analysis of an HSI CFA, the digital device evidence extractions from 2015 appeared to be in the same condition and obtained a new federal search warrant to review the digital device evidence.  Case No. 20-MJ-02510.  However, with respect to those digital devices, Agent Baker explained that there appeared to be no documented progress made by Agent Sampson regarding her review.  After obtaining a new warrant, Agent Baker independently reviewed the digital devices, but found no child pornography or child erotica images or videos.  The government does not intend to use any evidence from these digital devices at trial.

**B.   Procedural Background**

**1.   <u>Defendant Was Charged by State Authorities</u>**

Based on Agent Baker's review of defendant's badherb51@hotmail.com email address, on or about November 2020, the case was presented, but declined for federal prosecution by the United States Attorney's Office for reasons unrelated to the investigation of the case.  The state charged and arrested defendant in March 2021 for possession of child pornography, in violation of

California Penal Code § 311.  LASC Case No. KA126846.  The case was
called for preliminary hearing on September 1, 2022 and trailed to
September 22, 2022.

**2.  Defendant's Case Was Adopted Federally and Government Produced Significant Discovery**

The federal Indictment in this case was filed on September 21,
2022.  Dkt. 1.  Defendant first appeared before a judicial officer of
the court in which the charges in this case were pending on September
28, 2022, and was released on bond pending trial.  Dkts. 6,8.
Defendant was charged with five counts for distribution and receipt
of child pornography, in violation of 18 U.S.C. §§
2252A(a)(2)(A),(b)(1), and possession of child pornography, in
violation of 18 U.S.C. §§ 2252A(a)(5)(B),(b)(2).  The federal charges
are based exclusively on child pornography found in defendant's
badherb51@hotmail.com email address, and from Agent Baker's review of
those emails in 2020.  Each of the files charged in the indictment
were also verified as known child pornography images by NCMEC.

The government has produced more than 1,000 pages of discovery,
including the NCMEC Cyber Tip and other NCMEC reports, preservation
requests and search warrants, audio and video recordings of
interviews, law enforcement reports, surveillance and search warrant
photographs, chain of custody documentation, forensic examination
reports, and correspondence between defendant and CBP regarding
forfeiture of defendant's digital devices.  The government made its
initial discovery production on October 6, 2022 and has continued to
supplement its discovery, as appropriate, including in response to
defendant's supplemental discovery requests.  The government has also

1  made available for review the contents of defendant's

2  badherb51@hotmail.com email and digital devices.

3          **3.    Defendant Filed Motion to Compel Charging Information**

4          In March 2023, defendant sent the government a list of eleven

5  supplemental discovery requests.[3]  In response to those requests, the

6  government undertook a thorough review, produced additional

7  discoverable materials, and confirmed that it was aware of its

8  discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963),

9  Giglio v. United States, 405 U.S. 150 (1972), and its progeny, and

10 that it had complied with them.

11         Defendant filed his Motion to Compel the Production of Brady

12 Materials (Dkt. 29) ("Motion" or "Mot."), demanding that the

13 government turn over sensitive work product and other materials

14 relating to the deliberative process, namely, six broad categories of

15 information relating to the government's charging decision and

16 impeachment evidence relating to Agent Sampson.  (Mot. at 1.)

17 Specifically, defendant seeks discovery related to: (1) the federal

18 government's initial decision not to prosecute defendant in November

19 2020; (2) communications between federal and state prosecutors about

20 the status of defendant's state prosecution; (3) the District

21 Attorney's office's inability to proceed with the state prosecution;

22 (4) the federal government's adoption of the state case in September

23 2022; (5) the impact of the federal indictment on defendant's state

24 case; and (6) the personnel file and any other Henthorn material

25 regarding Agent Sampson.  (Mot. at 1.)  In support of the Motion,

26

27         [3] The supplemental discovery requests encompassed the subject

28 matter of the first five requests in the Motion, as well as other
topics.

7

1   defendant filed a declaration under seal and in camera that has not

2   been shared with or viewed by the government.  The Court set a

3   hearing on the motion for October 16, 2023.  (Dkt. 32.)

4   **III. ARGUMENT**

5         The government has complied with its discovery obligations.

6   While the government has not seen and thus cannot respond to

7   allegations made in the in camera submission, the factual background

8   of this case shows that the stated bases for defendant's Motion are

9   (1) inaccurate and speculative, or (2) irrelevant to the substance of

10  the case.  Defendant's Motion includes six separate categories of

11  discovery demands, all of which demand information traditionally

12  shielded from disclosure based on the work product and deliberative

13  process privileges.  But the charging function is within the special

14  province and broad discretion of government prosecutors and removing

15  that protection would chill the exercise of prosecutorial discretion

16  that is the exclusive province of the Executive branch.  Moreover,

17  for each of these demands, defendant has failed to articulate any

18  plausible factual basis to support how the information sought would

19  be favorable or why the information is in the government's

20  possession.  The Ninth Circuit has explained that motions like

21  defendant's which put forth mere speculation to justify discovery

22  requests should be denied.  Compelling disclosure of this protected,

23  sensitive information would have devastating effects on the ability

24  of prosecutors to freely and faithfully evaluate and discuss cases.

25        **A.   Legal Standard**

26        "There is no general constitutional right to discovery in a

27  criminal case."  Kaley v. United States, 571 U.S. 320, 335 (2014)

28  (quoting Weatherford v. Bursey, 429 U.S. 545, 559 (1977)).  There are

two sources of the government's discovery obligations in a criminal case that are relevant to the instant motion.

First, Rule 16 of the Federal Rules of Criminal Procedure establishes guidelines for pretrial production by the government, as well as reciprocal discovery by the defendant, of certain limited material, including items "material to preparing the defense."  Fed. R. Crim. P. 16(a)(1)(E)(i).  Under Rule 16(a)(1)(C), a defendant is entitled to documents that she can show are material to the preparation of her defense.  Rule 16, however, expressly excludes the "discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."  Fed. R. Crim. P. 16(a)(2).  See also Rule 16 Advisory Comm. Notes – 2013 Amendment ("a defendant's pretrial access to . . . documents under Rule 16(a)(1)(E) remains subject to the limitations imposed by Rule 16(a)(2)"); United States v. Fort, 472 F.3d 1106 (9th Cir. 2007).

Second, under Brady v. Maryland, 373 U.S. 83, 87 (1963) and Giglio v. United States, 405 U.S. 150, 154 (1972), the government must turn over to the defense evidence in its possession that is favorable to the defense and material either to guilty or punishment. United States v. Bundy, 968 F.3d 1019, 1031 (9th Cir. 2020).  In the pretrial context, the government must disclose favorable information in its possession, without attempting to predict whether disclosure would be material to the outcome of trial.  Id. at 1033.  Material can be favorable "either because it is exculpatory or impeaching." Id. at 1031.  But Brady, Giglio, and its progeny do not require the government to disclose neutral, irrelevant, speculative, or

inculpatory evidence.  See, e.g., United States v. Stinson, 647 F.3d 1196, 1208 (9th Cir. 2011).

And in a motion to compel Brady material, a defendant must provide more than speculation that favorable information exists.  A defendant's allegation that the requested information might be exculpatory does not entitle her to an unlimited or unsupervised search of the government's files.  See Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987).  "It is the government, not the defendant or the trial court, that decides prospectively what information, if any . . . must be disclosed under Brady."  United States v. Lucas, 841 F.3d 796, 807 (9th Cir. 2016).  Short of "defense counsel becom[ing] aware that ... exculpatory evidence was withheld and bring[ing] it to the court's attention, the prosecutor's decision on disclosure is final."  Ritchie, 480 U.S. at 59.  To "challenge the government's representation that it lacks Brady information, [a defendant] must either make a showing of materiality under Rule 16 or otherwise demonstrate that the government improperly withheld favorable evidence."  Lucas, 841 F.3d at 808; see also id. ("Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final.").  "[M]ere speculation about materials in the government's files [does] not require the district court to make those materials available, or mandate an in camera inspection."  United States v. Mincoff, 574 F.3d 1186, 1200 (9th Cir. 2009) (quotations omitted).  See also United States v. Lischewski, 2019 WL 2211328, *1-2 (N.D. Cal. May 22, 2019) (explaining that even without looking to materiality, the defendant must show "more than mere speculation that Brady material may exist").

**B.    Defendant's Requests Regarding Charging Decisions (Requests #1-5) are Speculative, Irrelevant, and Inaccurate**

Defendant's first five requests pertain to federal and state prosecutors' charging decisions.  As an initial matter, many of these internal deliberations are protected by the attorney work product and deliberative process privileges and are not discoverable.  As many courts have recognized, protecting internal work product and deliberations from disclosure "encourages forthright and candid discussions of ideas and, therefore, improves the decisionmaking process."  United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000).  Moreover, Rule 16(a)(2) explicitly notes that Rule 16 does not authorize discovery of internal government documents made in connection with investigating or prosecuting the case.  But even setting aside the fact that defendant's request seeks privileged information about its charging decisions, the government has re-reviewed the files in its possession in response to defendant's requests and confirmed that it has and will continue to comply with its discovery obligations under Brady, Giglio, and its progeny.  Defendant's proffered bases for these requests are inaccurate, speculative, and irrelevant.

First, defendant attempts to paint the investigation as "mishandled," but this is inaccurate.  Defendant says "two things are certain": that Agent Sampson did not timely complete her review of defendant's email data and that the government improperly retained defendant's devices for five years.  (Mot. at 7.)  But defendant bases the conclusion that Agent Sampson did not timely complete her review of defendant's badherb51@hotmail.com email data on two handwritten notes that lack context.  Even if defendant is correct

11

1   that those notes pertain to June 19 and June 29, 2015 dates on which

2   Agent Sampson reviewed emails, that review was timely.  The warrant

3   issued for the badherb51@hotmail.com email directed that the search

4   should be completed no later than 60 days from the date that the

5   response was received from Microsoft.  Case No. 15-MJ-0469.

6   Microsoft returned records for the badherb51@hotmail.com email on May

7   22, 2015.  In short, defendant's claim that it is "certain" Agent

8   Sampson exceeded the warrant deadline is inaccurate.

9        But more importantly, Agent Sampson no longer works at HSI Los

10   Angeles, the exact status of her review is unclear, and this case

11   turns on Agent Baker's 2020 review of the badherb51@hotmail.com email

12   data -- not Agent Sampson's review.  Thus, any potential error by

13   Agent Sampson was remedied by the new 2020 federal warrant that

14   authorized review of the badherb51@hotmail.com email data by Agent

15   Baker after disclosing the unknown status of Agent Sampson's earlier

16   review.

17        Additionally, defendant's digital devices were forfeited in

18   2016, so defendant's suggestion that any devices were improperly

19   retained is misplaced.[4]

20        Second, relying on these inaccuracies, defendant's basis for

21   seeking to compel discovery is entirely speculative.  Defendant

22

23   _____

24        [4] Defendant argues that federal prosecutors would have been
    concerned about investigative delays (Mot. at 7), but those
25   speculations are also inaccurate.  The investigation in this case was
    not completed until 2020 – when Agent Baker completed the review of
26   defendant's Microsoft data. See United States v. Lovasco, 431 U.S.
    783 (1977) (holding that purely investigative delay is not
27   unconstitutional); United States v. Sherlock, 962 F.2d 1349, 1355
    (9th Cir. 1989) (holding that ongoing investigation, the transfer of
28   agents working on the case, and other investigative needs were
    legitimate reasons for delay).  Defendant was indicted in 2022 soon
    after the review was complete.

theorizes that federal prosecutors "would undoubtedly" be concerned about the case, arguing that defendant's theory "seems entirely plausible." (Mot. at 7-8.) Defendant's own argument concedes that he is making "mere speculation about materials in the government's files," Mincoff, 574 F.3d at 1199-2000, and he has not affirmatively identified any exculpatory or impeachment evidence in the government's possession.

At best, defendant says that "to the extent" the federal government's declination was related to Agent Sampson, or "if" federal prosecutors' communications pertained to Agent Sampson or other investigation handling concerns, that information must be produced. (Mot. at 8.) Despite defendant's pure speculation that this material exists, the government has exceeded its discovery obligation, re-reviewed its files, and confirmed that no such documented concerns or communications exist. And, again, the charges in this case are exclusively based on defendant's badherb51@hotmail.com email data, Agent Baker's 2020 review of that data pursuant to a federal warrant issued after Agent Sampson's incomplete review was disclosed, and NCMEC's analysis of the child pornography resulting from Agent Baker's review.

Third, cases from this circuit underline that defendant's speculative basis for his discovery requests is insufficient and that the Motion should be denied.

For example, in United States v. Mincoff, 574 F.3d at 1199, the defendant was informed about a contradictory statement made by a witness during FBI interviews. The defendant filed a motion for Brady/Giglio material, requesting untruthful or incomplete information or testimony and notes taken during FBI interviews. Id.

1   The Ninth Circuit affirmed denial of that request, explaining that,

2   aside from the single contradiction, defendant had not sufficiently

3   identified any potentially exculpatory evidence not disclosed to him.

4   Id. at 1200.  It explained that defendant's "mere speculation about

5   materials in the government's files," did not require the court to

6   make those materials available or conduct an in camera review.   Id.

7        In United States v. W.R. Grace, 401 F. Supp. 2d 1069, 1083 (D.

8   Mon. Nov. 23, 2005), the defendants sought documents showing that

9   W.R. Grace communicated potential dangers of a product to prospective

10  buyers.  The defendants argued that, because the discovery included

11  one letter from W.R. Grace to a prospective buyer advising of risks,

12  that "one would expect to find," other examples of these advisements.

13  Id.  The court denied defendants' request, explaining that

14  "[d]efendants' speculation as to the existence of other documents

15  showing notice to prospective buyers is insufficient to warrant an

16  order directing the prosecution to hunt for other examples 'one would

17  expect to find.'"   Id.  Rather, "[t]o merit discovery under Rule 16,

18  the defense must present 'facts which would tend to show that the

19  Government is in possession of information helpful to the defense.'"

20  The Court further explained that:

21        Neither a general description of the information sought nor
          conclusory allegations of materiality suffice.  The
22        government is subject to self-executing obligations under
          Brady and discovery obligations triggered by valid requests
23        under Rule 16.  The Court will not impose an additional burden
          by compelling production of documents that may or may not
24        exist based on the speculative inferences of the defense.

25  Id. (cleaned up).

26       In both Mincoff and W.R. Grace, the moving party was made

27  aware of the existence of Brady/Giglio material, pointed to that

28

                                    14

1   <u>Brady</u>/<u>Giglio</u> material in support of seeking additional similar

2   materials, but their requests were still denied because they

3   amounted to mere speculation about materials in the government's

4   files.  Here, defendant's motion cites no actual evidence that

5   the materials sought exist and is based entirely on speculation.

6   The government has complied with its discovery obligations and

7   defendant has no reliable basis to assert that the government is

8   withholding favorable evidence.  <u>See also</u> <u>Ritchie</u>, 480 U.S. at

9   58 n. 15 (explaining that defendant must establish a basis or

10  "some plausible showing" for claim that information would be

11  material).

12          **C.   Defendant's Request Regarding Agent Sampson (Request #6) is**
            **     Irrelevant and Inaccurate**

13

14          As discussed above, defendant's request regarding Agent

15  Sampson's personnel file is based on unsupported assumptions and is

16  irrelevant because the charges are based on Agent Baker's 2020

17  review.  But more importantly, Request #6 seeks impeachment

18  information.  The government is only required to examine personnel

19  files of law enforcement officers it intends to call as witnesses at

20  trial.  <u>See</u> <u>United States v. Henthorn</u>, 931 F.2d 29, 31 (9th Cir.

21  1991).  This case is based on Agent Baker's investigation, and the

22  government does not currently intend to call Agent Sampson at trial.

23  Accordingly, because defendant's Request #6 appears directed solely

24  to information to be used for impeachment purposes, it should be

25  denied on that basis.

26          Should this case proceed to trial, the government will disclose

27  its witnesses pursuant to the Court's trial order and will fully

28  comply with its obligations under the Jencks Act, <u>Giglio</u>, and

15

1    <u>Henthorn</u>.

2  **IV.   CONCLUSION**

3        For the foregoing reasons, the government respectfully requests

4    that this Court deny defendant's Motion.